UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER CAPITAL VENTURES, LLC,<br><br>            Plaintiff,<br><br>     v.<br><br>BOLT FINANCIAL INC.,<br><br>            Defendant. | Case No.  25-cv-06401-EMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Docket No. 32 |

Plaintiff Alexander Capital Ventures, LLC ("ACV") has filed suit against Defendant Bolt Financial, Inc. ("Bolt"), a privately held financial technology company.  As alleged by ACV, certain third-party Bolt shareholders agreed to sell their stock to ACV, and Bolt told ACV that it was approving the sales – declining to exercise its right of first refusal under which it could buy the shares itself before the third parties could sell to someone else.  ACV maintains that Bolt strung ACV along and then, last minute, changed its mind and decided that it did want to buy the shares.  ACV has sued Bolt for unfair competition in violation of § 17200, unjust enrichment, and intentional and negligent interference with prospective economic advantage.  Now pending before the Court is Bolt's motion to dismiss.

Having considered the parties' briefs as well the oral argument of counsel, the Court hereby **GRANTS** Bolt's motion.

## I.      FACTUAL & PROCEDURAL BACKGROUND

In the operative first amended complaint ("FAC"), ACV alleges as follows.

Certain third parties were purchasers, and therefore owners, of Bolt stock.  *See* FAC ¶ 5 (listing the third parties as: NRGAWA Invest AB, Nyvik Holding, Connysoren, Walm Networks,

Mikael Sjogren, Erik Hedenyrd, and Pal Asberg Kalle Schroder). The third parties' purchases and ownership of the stock were governed by stock purchase agreements. *See* FAC ¶ 5. Under the stock purchase agreements, if the third parties wanted to sell their Bolt shares, Bolt had the right of first refusal – *i.e.*, Bolt had to be given a chance to buy the Bolt shares first before the third parties sold the stock to someone else. *See* FAC ¶¶ 6-7 (referring to the stock purchase agreements between Bolt and the third parties and identifying the provision that contains the right of first refusal).

In conjunction with its motion to dismiss, Bolt has provided copies of the stock purchase agreements between itself and the third parties. *See* Breslow Decl., Exs. 1-7 (stock purchase agreements). Bolt maintains that it is appropriate for the Court to consider the agreements under the incorporation-by-reference doctrine. *See Davis v. HSBC Bank*, 691 F.3d 1152, 1160 (9th Cir. 2012) (stating that, under the doctrine, a court may – at 12(b)(6) – "take into account 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading'"). ACV does not object.

Bolt's right of first refusal is found in § 8 of the stock purchase agreements. The relevant text is provided below.

> 8. Company's Right of First Refusal. Subject to the Bylaws Transfer Restrictions, before any Shares that are not Pledged Shares that are held by Stockholder or any transferee (other than the Company) (either the Stockholder or such transferee being sometimes referred to herein as the "***Holder***") of such Shares may be sold or otherwise transferred (including transfer by gift or operation of law), the Company and/or its assignee(s) shall have a right of first refusal to purchase the Shares on the terms and conditions set forth in this Section 8 (the "***Right of First Refusal***").
>
> 8.1 Notice of Proposed Transfer. The Holder of the Shares shall deliver to the Company a written notice (the "***Notice***") stating: (i) the Holder's bona fide intention to sell or otherwise transfer such Shares; (ii) the name of each proposed Stockholder or other transferee ("***Proposed Transferee***"); (iii) the number of Shares to be transferred to each Proposed Transferee; and (iv) the bona fide cash price or other consideration for which the Holder proposes to transfer the Shares (the "***Offered Price***"), and the Holder shall offer the Shares at the Offered Price to the Company or its assignee(s).

        8.2      Exercise of Right of First Refusal.  At any time within thirty (30) days after receipt of the Notice, the Company and/or its assignee(s) may, by giving written notice to the Holder, elect to purchase all, but not less than all, of the Shares proposed to be transferred to any one or more of the Proposed Transferees, at the purchase price determined in accordance with Section 8.3 below.

      . . . .

Breslow Decl., Ex. 1 (§ 8).

On March 14, 2025, ACV (*not* the Bolt shareholders themselves) informed Bolt of its "intent[]" to buy Bolt shares from multiple shareholders.  *See* FAC ¶ 8.  Bolt asked who the shareholders were and ACV provided the names.  *See* FAC ¶¶ 9-10.  ACV later provided, upon Bolt's request, additional information – *i.e.*, the price and share count for each intended purchase.  *See* FAC ¶¶ 12-13 (alleging that there were a total of 282,661 shares at issue, at $1.00 per share, for a total cost of $282,661).

On April 7, 2025, Bolt informed ACV that Bolt's Board had approved the transaction.  *See* FAC ¶¶ 16, 18.  However, nothing concrete happened for several months.

In June 2025, Bolt again indicated to ACV that it intended to waive its right of first refusal but stated that it had some clarifying questions.  Bolt also asked for confirmation of who the third parties were who would be selling the stock to ACV.  *See* FAC ¶ 20.

On June 11, 2025, Josep Nolla, "*an independent consultant working with the third-party [Bolt shareholders]*," confirmed who the shareholders were to Bolt.  FAC ¶ 21 (emphasis added).

On July 1, 2025, Bolt gave proposed transfer agreements to Mr. Nolla.  Bolt also asked for confirmation as to how many shares one shareholder (Walm Network) was selling.  *See* FAC ¶ 27.  Mr. Nolla reported back that the shareholder was now selling all of its shares, which meant that the total number of shares ACV would buy from the various shareholders would now be 287,758 (slightly higher than before).  *See* FAC ¶ 28.

Bolt then asked Mr. Nolla to hold off on circulating the proposed transfer agreements.  Thereafter, at the end of the day, Bolt informed Mr. Nolla (without telling anyone at ACV) that Bolt wanted to repurchase all shares itself, thus blocking the sale to ACV.  *See* FAC ¶ 30.

According to the FAC, Bolt's exercise of the right of first refusal was inconsistent with the provision in the stock purchase agreements which gave Bolt the power to exercise the right for only thirty days after receipt of notice of prospective sale. *See* FAC ¶¶ 7, 33. Here, Bolt was well past the thirty-day period. *See* FAC ¶ 36 (indicating that 109 days passed "between March 14, 2025 – when Plaintiff ACV had announced its proposed purchase of Bolt shares – and July 1, 2025, when Defendant Bolt first purported to rescind its waiver of the right of first refusal and purchase the shares at issue for itself").

Based on, *inter alia*, the above allegations, ACV has asserted the following claims for relief:

    (1) Unfair competition in violation of California Business & Professions Code § 17200.

    (2) Unjust enrichment.

    (3) Intentional interference with prospective economic advantage.

    (4) Negligent interference with prospective economic advantage.

## II.    <u>DISCUSSION</u>

A.    <u>Legal Standard</u>

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."

United States District Court
Northern District of California

*Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

B.      Unfair, Unjust, or Wrongful Conduct

As noted above, the causes of action pled by ACV are unfair competition in violation of § 17200, unjust enrichment, and intentional/negligent interference with prospective economic advantage. Though the elements of the claims differ, the claims do have one thing in common: each requires that the defendant have engaged in unfair, unjust, or wrongful conduct. A § 17200 claim, for instance, requires unfair or unlawful conduct. *See* Cal. Bus. & Prof. Code § 17200 (providing that "unfair competition" means "any unlawful, unfair or fraudulent business act or practice"). For a claim of unjust enrichment, a plaintiff must show that the defendant received a benefit and unjustly retained that benefit at the expense of another. *See Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000) (stating that "the elements for a claim of unjust enrichment [are] receipt of a benefit and unjust retention of the benefit at the expense of another"). And for a claim for interference, whether intentional or negligent, the alleged interference must have been wrongful by some measure beyond the fact of the interference itself – *i.e.*, the interference was proscribed by a constitutional, statutory, regulatory, common law, or other determinable legal standard. *See Crown Imports, LLC v. Superior Court*, 223 Cal. App. 4th 1395, 1404 (2014) (intentional interference); *Tibrio, LLC v. Flex Mktg., LLC*, No. 23cv1167-LL-BGS, 2024 U.S. Dist. LEXIS 54299, at *7-8 (S.D. Cal. Mar. 26, 2024) (negligent interference).

In its papers, ACV has suggested unfair, unjust, or wrongful conduct by Bolt because (1) ACV did all the work in finding the sellers and negotiating the price; and (2) Bolt exercised its right of refusal more than 30 days after being notified of the prospective sale. Neither theory is persuasive.

/ / /

With respect to (1), it may well be true that ACV did all the work, but Bolt cannot be said to have done anything wrong because it had the right of first refusal under the stock purchase agreements with the third parties.  In other words, someone else doing all of the work was built into the right of first refusal, and ACV has not shown how that is unfair, unjust, or wrongful.  ACV has not claimed that a right-of-first-refusal provision is illegal.

As for (2), there are two problems for ACV.  First, the stock purchase agreements expressly state that the 30-day period for Bolt to exercise its right of first refusal is triggered by notification of a prospective sale *from the shareholder*.  *See* Breslow Decl., Ex. 1 (§ 8.1) ("The Holder of the Shares shall deliver to the Company a written notice (the "Notice") stating: (i) the Holder's bona fide intention to sell or otherwise transfer such Shares; (ii) the name of each proposed Stockholder or other transferee ("Proposed Transferee"); (iii) the number of Shares to be transferred to each Proposed Transferee; and (iv) the bona fide cash price or other consideration for which the Holder proposes to transfer the Shares (the "Offered Price"), and the Holder shall offer the Shares at the Offered Price to the Company or its assignee(s).").  This makes sense because any sale is dependent on the *seller* agreeing to the sale, no matter what the purchaser may want.  As alleged in the FAC, the first time that Bolt got notice from the third-party shareholders was – at best – on **July 11, 2025**, when Mr. Nolla (the independent consultant working on behalf of the third parties) confirmed who the sellers were.  *See* FAC ¶ 21.  Bolt then decided to buy the shares itself on July 1, 2025, which was within the 30-day period.

To be sure, ACV has alleged that it told Bolt of its "intention to 'purchas[e] sales of Bolt through multiple selling shareholders'" **on March 14, 2025**, FAC ¶ 8, and Bolt apparently relied on that representation (*e.g.*, getting information from ACV about who the sellers were and what the prices would be for the sales, and further getting approval from the Board for the sales *before* Mr. Nolla said anything).  But that does not change the fact that, per the stock purchase agreements, the deadline for Bolt to exercise its right of first refusal was tied to notice from the Bolt shareholder(s), not the prospective buyer.[1]

---

[1] At the hearing, ACV suggested for the first time that Bolt waived the right to rely on the contractual provision requiring that notice come from the shareholder.  Because this argument was

United States District Court
Northern District of California

Second, even if Bolt exercised its right of refusal in an untimely fashion (*i.e.*, the deadline was triggered by notice from ACV), that still does not make what it did unjust. The deadline for Bolt to exercise the right of first refusal was a benefit for the Bolt shareholders, not a prospective buyer. (ACV does not contend that it was a third-party beneficiary to the stock purchase agreements. Nor is there anything on the face of the stock purchase agreements suggesting that ACV or an entity/person in its position could be a third-party beneficiary.) That being the case, as the third-party shareholders implicitly decided to waive their right to enforce the deadline, then Bolt again cannot be said to have acted unjustly. At most, ACV simply had an expectancy that it would be able to buy the Bolt stock. ACV does not even claim that it relied to its detriment on Bolt's representation that it would not be exercising its right of first refusal. Accordingly, there is no wrongful or unjust act upon which ACV can claim a legally protectable interest. ACV is not left without any remedy because it can still seek relief against the third-party shareholders if they breached their agreement to sell (assuming there was one) to ACV.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

not raised in ACV's papers, the Court does not entertain it. Even if the Court were to consider the argument, it would have no impact on the Court's resolution of this motion. As discussed below, whether there was a waiver or not was a matter between the contracting parties only, *i.e.*, Bolt and the third-party shareholders. That is, the shareholders could enforce any alleged waiver by Bolt, but not ACV.

7

### III.   CONCLUSION

Because ACV has failed to allege unfair, unjust, or wrongful conduct, all of its causes of action fail.  Furthermore, ACV has failed to show that amendment would not be futile.  At the hearing, ACV was given the opportunity to explain the alleged improper conduct by Bolt but ACV's position essentially remained the same.  Accordingly, the dismissal of the complaint is with prejudice.

The Clerk of the Court is ordered to enter a final judgment and close the file in this case. This order disposes of Docket No. 32.

**IT IS SO ORDERED**.

Dated: February 6, 2026

_____
EDWARD M. CHEN
United States District Judge